**In the Matter of William
K. O'DONNELL.**

No. 99–339–M.P.

Supreme Court of Rhode Island.

Aug. 19, 1999.

David Curtin, Chief Disciplinary Counsel, for petitioner.

Robert E. Craven, Providence, for respondent.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

---

1. Article III, Rule 4(c) of the Supreme Court Rules of Disciplinary Procedure, authorizes a retired judge or justice of the Supreme, Superior, Family, District or Worker's Compensation Court to preside over a formal disciplinary proceeding.

## OPINION

### PER CURIAM.

This disciplinary case is before the Court on a recommendation of the Supreme Court Disciplinary Board (board) that the respondent, William K. O'Donnell, be suspended from the practice of law. Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure provides, in pertinent part, that "[i]f the [Disciplinary] Board determines that a proceeding *** should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order." This Court has reviewed the record of the proceedings before the board. The respondent appeared before the Court, with counsel, pursuant to an order to show cause why he should not be disciplined in accordance with the board's recommendations. Having heard the representations of the respondent, it is our opinion that cause has not been shown and that discipline is warranted.

The facts supporting the board's recommendation arose from three complaints filed with the board by clients of respondent. These separate matters were consolidated for hearing before a retired justice of the Superior Court in accordance with Article III, Rule 4(c), of the Supreme Court Rules of Disciplinary Procedure.[1] The hearing justice made extensive and detailed findings of fact which were adopted by the board and submitted to this Court. We summarize those facts relevant to the disposition of this case below.

The first complaint before the board was filed by Thomas W. Quinlan (Quinlan). In April 1989, Quinlan was involved in a physical altercation with his next door neighbor. As a result of the fight, he incurred

personal injuries, and retained respondent to bring a claim for damages. On April 6, 1992, respondent filed a civil action in the Superior Court against Quinlan's neighbor, asserting claims for assault and battery and seeking compensation. The neighbor was duly served, and retained his own counsel to defend the suit.

The neighbor in the civil action proceeded to seek discovery. On February 18, 1993, the neighbor served a request for the production of documents on Quinlan in accordance with Rule 34 of the Superior Court Rules of Civil Procedure. The respondent received the document production request. He did not object to the request or produce the requested documents within twenty days, as the rule in effect at that time provided.[2]

■ On March 12, 1993, the neighbor filed a motion with the Superior Court to compel a response to the discovery request. This motion was also received by respondent, who did not reply. Accordingly, by court rule, the motion was granted. A copy of the order granting the motion to compel was forwarded to respondent. When no response was forthcoming, the neighbor filed a motion to dismiss Quinlan's civil action for failure to comply with the court's order. This motion was also received by respondent, and again no objection or reply was made. On June 30, 1993, final judgment was entered by the court, dismissing Quinlan's claim.

The respondent's failure to take any action to prevent the dismissal of his client's case was compounded by his failure to advise the client of the status of the proceedings. Quinlan was not made aware that his case was in jeopardy for failure to respond to discovery, and respondent did not advise Quinlan that his case had been dismissed. It was not until three years

later that Quinlan learned from a third party that his case was disposed of by order of the court. His learning of this fact led to his filing of the instant disciplinary complaint.

The respondent was charged with violating Article V, Rules 1.3 and 1.4(a)[3] of the Supreme Court Rules of Professional Conduct as a result of his ineffective representation of Quinlan. Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." In his representation of Quinlan, respondent failed to abide by the obligations imposed under Rule 1.3. His neglect of the client's case, and his failure to respond to motions filed by the neighbor and orders issued by the court led to the dismissal of his client's cause of action. Accordingly, we have no choice save to conclude that respondent has violated this rule.

■ Then existing Rule 1.4(a), now codified as Rule 1.4(b), provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." The respondent clearly violated this rule by not advising his client of pending discovery issues that affected his cause of action. At a minimum, he was obligated to inform his client that his case was in jeopardy at a time when corrective action could be taken. His failure to inform him of the dismissal was inexcusable. Quinlan was entitled to receive this information from his own attorney, and not a third party unrelated to the action, years after the fact.

■ The respondent provided testimony in mitigation at the hearing on the Quinlan matter. Among his stated reasons for not aggressively pursuing the case

2. The rule which pertains to the production of documents, Rule 34(b) of the Superior Court Rules of Civil Procedure, has since been amended to allow forty days to comply with a request for production of documents.

3. In 1998, this Court amended Article V, Rule 1.4 of the Supreme Court Rules of Professional Conduct. The provisions of Rule 1.4(a), as relevant to the instant proceedings, are now codified as Rule 1.4(b) of the Rules of Professional Conduct.

was his belief that Quinlan's injuries were relatively minor; that Quinlan had been the original aggressor in the altercation which led to his injuries. The respondent also expressed a reluctance to forcing a sale of the neighbor's home to satisfy any judgment that might be obtained on Quinlan's behalf. We agree with the hearing judge that these are not mitigating factors. If respondent believed the client's case had limited merit he should have declined the representation or withdrawn from the case pursuant to Rule 1.17 of the Rules of Professional Conduct. The decision to pursue a case to conclusion rests with the client, not the attorney. An attorney cannot simply abandon litigation without the knowledge and consent of his or her client.

■ The second complaint before the board was filed by Glenn Sousa (Glenn). In September 1980, Irving Sousa (Irving), Glenn's father, was involved in a motor vehicle accident with a bus operated by the Rhode Island Public Transit Authority (RIPTA). Irving retained respondent to represent him in a claim for damages, and suit was filed on Irving's behalf in the Superior Court in 1982. Irving died in 1985 and Glenn was substituted as the party plaintiff. In January 1988, the Superior Court entered a conditional order of default for plaintiff's failure to provide answers to interrogatories. There was no further activity in the case until 1992.

In 1992, RIPTA assigned new counsel to defend the case. Upon taking over the case, counsel for RIPTA spoke to respondent regarding the purportedly unanswered interrogatories, and also requested copies of medical reports and bills. The respondent verbally agreed to provide the requested information, although he advised counsel that he believed the medical records had previously been provided.

The requested documents were not forwarded to counsel. On August 26, 1992, counsel for RIPTA made a written request to respondent for the written interrogatory answers and also submitted a request for the production of documents pursuant to Super.R.Civ.P. 34. The respondent did not object to the request for production, a lapse that set in motion a chain of events which led to the dismissal of the Sousa case.

On November 20, 1992, RIPTA filed a motion to compel the production of documents. Only at that point did respondent object, and by then it was too late. Under Rule 34, a party who fails to object to a discovery request becomes obligated to comply and may not challenge the propriety of the discovery request when an order to compel compliance is sought.

The respondent's objection to the motion was scheduled to be heard on January 13, 1993. However, he did not appear. RIPTA's motion to compel was granted on that date, and on January 14, 1993, a copy of a proposed order was forwarded to respondent. On January 15, 1993, the order was entered by the court. On March 5, 1993, RIPTA filed a motion to dismiss the Sousa complaint, and sent a copy of the dismissal motion to respondent. No objection was filed, and on April 19, 1993, the Superior Court entered an order dismissing the Sousa complaint.

There was a great deal of testimony elicited at the disciplinary hearing regarding the circumstances leading up to the dismissal of the Sousa case and subsequent actions of respondent to vacate that order of dismissal. The respondent testified that he was not present for the January 13, 1993 hearing because he had been called before another court on a different matter. He testified that when he called the clerk to notify the court that he could not be present, he realized the judge presiding over the calendar could not hear the motion as that judge recused herself from hearing all of respondent's matters. He assumed the case would be passed.

We agree with the hearing justice that respondent assumed too much. Whether or not he believed that the motion justice would not hear the matter, he had a duty to his client to insure the client's interests

were adequately protected. However, respondent demonstrated his lack of concern for his client when he testified that he did not learn that the motion to compel had been granted until almost one year after the order had been entered. At a minimum, he should have inspected the record or communicated with the clerk to determine the court's decision in respect to the motions.

The respondent also testified that he did not receive copies of the subsequent motions filed by RIPTA which inexorably led to dismissal of the case. This testimony was contradicted by counsel for RIPTA. We need not reiterate each fact that the hearing justice considered to reach his conclusion on this disputed point. We note that the hearing justice found respondent's testimony to be less than credible, and accept his finding that respondent in fact had notice that the Sousa case was in imminent peril of dismissal and failed to take the requisite steps to prevent this dismissal from occurring. Accordingly, we agree with the board that respondent violated Rule 1.3 of the Rules of Professional Conduct in his representation of Sousa.

In 1994, respondent filed a motion to vacate the dismissal of the Sousa case. It is disputed whether that motion was properly served on RIPTA. However, we agree with the hearing justice that it would be of no moment to the instant disciplinary case if that motion were ever to be granted. Also, we note that respondent has pursued this motion with less than due diligence, and the Sousa case stands dismissed as of the date of this opinion.

■ The respondent's lack of diligence in his representation of Sousa is further reflected in his dereliction of his obligation to respond to requests for information from Disciplinary Counsel. Rule 8.1(b) of the Rules of Professional Conduct provides, in pertinent part, that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from *** disciplin-

ary *** authority ***." In the instant case, respondent failed to reply to two requests from disciplinary counsel that he respond to a disciplinary complaint filed by Sousa and failed to schedule an appointment with disciplinary counsel to discuss the Sousa complaint when requested to do so. An attorney's failure to cooperate with the Office of Disciplinary Counsel "has a corrosive effect on the confidence that the public must have in the legal profession's ability to regulate the conduct of its members." *In the Matter of Watt,* 701 A.2d 1011, 1012 (R.I.1997). The respondent's failure to cooperate with disciplinary counsel violates Rule 8.1(b) and serves to undermine public confidence in the profession.

■ The final matter in this trilogy of complaints before the board was filed against respondent by Joseph St. Germain (St.Germain). In 1983, St. Germain was injured in a motor vehicle accident involving an automobile owned by Parts, Inc. and operated by Robert J. Brazenor (Brazenor). St. Germain hired respondent to represent him in 1984. In January 1986, respondent filed suit in the Kent County Superior Court against both Parts, Inc. and Brazenor, and paid the applicable filing fee. The court record does not reflect any further activity on the case.

In August 1987, St. Germain incurred separate injuries attributable to an incident of medical malpractice. St. Germain pursued a claim for damages as a result of those injuries, and employed an attorney who worked in respondent's office to represent him in that matter. The medical malpractice claim was resolved in 1994, and St. Germain received compensation for those injuries.

Subsequent to the settlement of the malpractice case, St. Germain became curious as to the fate of his claim against Parts, Inc. and Brazenor. When his attempts to gain information about the status of that case from respondent proved unsuccessful,

he filed a complaint with the disciplinary counsel.

At the disciplinary hearing, respondent raised two defenses to disciplinary counsel's allegation that he had neglected St. Germain's case. First, respondent claimed that he had effectuated service against Parts, Inc., but acknowledged that he had not made service on Brazenor. However, the record does not support respondent's contention.

The Superior Court record does not contain a return of service on either party. The respondent rests his contention on the fact that his file contains a notation that he had paid a constable for service in this case. However, he did not or could not produce documentary evidence to support this notation. The respondent called a constable to testify at the disciplinary hearing that service had been made. However, an examination of the constable's testimony reveals he had no independent memory of making service in this case, and his testimony was based solely on what he had been told by respondent prior to his appearance at the disciplinary hearing. The hearing justice properly rejected this testimony as pure conjecture on the constable's part.

The respondent also argued that he and St. Germain had agreed to defer action on the Parts, Inc. claim pending conclusion of the medical malpractice case. However, even if such an agreement had been made, it was an illusory one. The incident giving rise to the malpractice claim had not occurred until more than two years had elapsed from the filing of the suit against Parts, Inc. and Brazenor. Rule 4(b) of the Superior Court Rules of Civil Procedure requires that service of process must be effectuated within a reasonable time after a complaint has been filed. *See also Brophy v. Schuldner,* 692 A.2d 693, 693–94 (R.I.1997) ("plaintiff must implement service of process within a reasonable time following filing of a complaint"). In *Curtis v. Diversified Chemicals and Propellants Co.,* 440 A.2d 747, 749 (R.I.1982), this

Court affirmed the dismissal of an action where there had been a four-to-seven-month delay between the filing of the complaint and the service of process. Here, the malpractice cause of action had not arisen until thirty months had elapsed since the filing of the complaint, with no service having been made. The respondent must have been aware that St. Germain's claim against Parts, Inc. was in jeopardy well before the malpractice claim arose. We agree with the hearing justice that any agreement between respondent and St. Germain to defer action due to the pending malpractice claim "smacks of deception" on the part of respondent.

■ The respondent's neglect of St. Germain's case is clear. While his neglect of that matter continued throughout his purported representation, the harm had occurred when St. Germain's case was lost due to respondent's failure to effectuate service within a reasonable time. Accordingly, the hearing justice determined that his conduct must be evaluated in accordance with the Code of Professional Responsibility, which was in effect at the time. *See In the Matter of DiSandro,* 680 A.2d 73, 74 n. 2 (R.I.1996). The applicable Code provision is DR 6–101(A)(3), which provides that "[a] lawyer shall not *** [n]eglect a legal matter entrusted to him." The respondent's failure to secure service of process and pursue St. Germain's case violated this rule. Additionally, respondent's failure to properly inform St. Germain as to the status of his case violated Rule 1.4(a) as well.

As in the Sousa matter, respondent was less than diligent in responding to disciplinary counsel's lawful requests for information regarding St. Germain's disciplinary complaint. The respondent submitted required answers to the complaint only after disciplinary counsel had informed him that his continued failure to respond would result in a referral to this Court. The respondent failed to schedule a requested appointment with disciplinary counsel. Such a failure to comply with

reasonable requests of disciplinary counsel violated Rule 8.1(a) of the Rules of Professional Conduct.

■ The hearing justice recommended to the board that respondent be suspended from the practice of law for period of four months. The board concurred in that recommendation and has forwarded it to us for review.

In these three instances, respondent has demonstrated complete inattention to legal matters entrusted to his care. He has been privately censured by this Court in three prior instances, each time for exhibiting a lack of diligence in his representation of clients. He has been admonished by the board in four other instances. Most troubling of all is his lack of candor at the disciplinary hearing.

However, it must also be noted that respondent's career has been marked by acts of distinction. He has generously donated his services to indigent clients who need legal services, and has been honored by the bar with an award for his *pro bono publico* services. He has represented indigent clients in criminal cases at the request of members of the judiciary. He has also been a benefactor to law students, volunteering his services as a moot court judge at area law schools. His altruism has extended to community activities as well.

■ In fashioning an appropriate sanction, we must consider the purposes of professional discipline. Those purposes are to protect the public and maintain the integrity of the profession, not to punish the attorney. *In the Matter of Scott,* 694 A.2d 732, 736 (R.I.1997). While this Court gives great weight to the recommendations of the board, we must be the final arbiter of professional discipline. After review of the entire record, and consideration of all of the factors in mitigation and aggravation of respondent's conduct, it is our view that a lesser period of suspension than that recommended by the board is appropriate.

Accordingly, the respondent, William K. O'Donnell, is hereby suspended from the practice of law for three months, commencing thirty days from the date of the filing of this opinion.