**In the MATTER OF Robert F. DiPIPPO.**

No. 2000–12–M.P.

Supreme Court of Rhode Island.

Feb. 2, 2000.

David Curtin, Chief Disciplinary Counsel, for Petitioner.

Gary Blais, Providence, for Respondent.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

**O P I N I O N**

PER CURIAM.

This disciplinary case is before the Court pursuant to a recommendation of the Supreme Court Disciplinary Board (board) that Robert F. DiPippo (respondent) be suspended from the practice of law for three years. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

> "If the Board determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The facts supporting the board's recommendation are not in dispute. On November 18, 1994, Elizabeth DiPippo (Elizabeth), respondent's niece, was involved in an automobile accident. As a result of that accident she incurred medical bills in the amount of $35,303.59. Those bills were paid by her health insurance carrier, Blue Cross/Blue Shield of Rhode Island (Blue Cross). By contractual agreement, Blue Cross had a subrogation claim for reimbursement should Elizabeth receive compensation for her injuries from a third party.

Elizabeth engaged the services of respondent to represent her in a claim for damages against the party responsible for the accident. During the course of that representation, Blue Cross and respondent entered into an agreement wherein respondent agreed to protect Blue Cross's subrogated interest in any settlement and that respondent would receive an attorney's fee of one-third of the amount recovered for Blue Cross. Accordingly, pursuant to the terms of that agreement,

respondent was obligated to remit to Blue Cross $23,535.73 upon settlement of Elizabeth's case.

On May 30, 1996, respondent negotiated a partial settlement of Elizabeth's claim in the amount of $100,000 with the tortfeasor's insurance carrier, with the remaining portion of the ·claim to be determined by arbitration. When respondent received that portion of the settlement, he distributed funds to his niece and to himself as fees, but did not forward payment to Blue Cross. The second and final phase of the settlement was effectuated on June 27, 1997, by an arbitrator's award in favor of Elizabeth in the additional amount of $60,-995.45. Upon receipt of those funds respondent made additional disbursements to his niece and to himself, but not to Blue Cross. He did not deposit the funds due Blue Cross into a client account, but converted those funds to his own use.

Blue Cross filed a complaint against respondent with the Office of Disciplinary Counsel. On May 6, 1998, after an investigation had commenced, respondent made a partial payment to Blue Cross in the amount of $5,000. On May 5, 1999, an additional payment was forwarded to Blue Cross in the amount of $5,431.72, leaving a balance due of $13,104.01. As of the date of this opinion, respondent has made no further payments to Blue Cross.

■ The board has determined that respondent's conduct in this matter violates Article V, Rules 1.15(a) and (b), and 8.4(c) of the Supreme Court Rules of Professional Conduct. We agree. Rule 1.15(a) requires an attorney to segregate the funds of a client or third party in a separate client account. Rule 1.15(b) requires prompt payment of those funds to the client or third party entitled to receive them. In this matter respondent failed to segregate those funds belonging to Blue Cross in a client account and failed promptly to pay those funds as required. Indeed, his conversion of those funds is not only a violation of these rules, but also

may have criminal as well as civil implications.

■ The respondent's conduct is also in violation of Rule 8.4, which provides, "It is professional misconduct for a lawyer to: * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." We have consistently held that the conversion of funds constitutes fraud and dishonesty as proscribed by this rule. *See In the Matter of Hodge,* 676 A.2d 1362, 1363 (R.I.1996); *In the Matter of Krause,* 676 A.2d 1340, 1342 (R.I.1996).

■ Upon receipt of a recommendation from the board for the imposition of professional discipline, this Court reviews not only the specific acts of misconduct giving rise to the disciplinary proceedings but also any factors that would serve to aggravate or mitigate the conduct of the attorney. We then impose a level of discipline that will "protect the public and * * * maintain the integrity of the profession." *In the Matter of Ricci,* 735 A.2d 203, 208 (R.I.1999). We note that the respondent has been a member of the bar for thirty-six years, has represented numerous clients during this period, and, as he stated in conference, has served on the board of directors of a law school. However, he previously has been suspended from the practice of law for three months by this Court for ethical misconduct, *see In the Matter of DiPippo,* 678 A.2d 454 (R.I. 1996), and has received previous private discipline for ethical lapses of a less serious ·nature. ·In balancing these facts, we conclude that respondent has not presented any mitigating circumstances that would warrant the imposition of a sanction less than that recommended by the board.

Our review of this matter leads us to conclude that the board's recommendation is appropriate. Accordingly, the respondent, Robert F. DiPippo, is suspended from the practice of law for three years commencing thirty days from the date of this opinion, and shall comply with the mandates of Article III, Rule 15 of the

Supreme Court Rules of Disciplinary Procedure. At the conclusion of this period of suspension, he may apply for reinstatement by filing a petition with this Court in accordance with Article III, Rule 16 of the Supreme Court Rules of Disciplinary Procedure, at which time he will bear the burden of convincing the Court by clear and convincing evidence that he possesses the moral fitness to resume the practice of law.