**In the Matter of Robert F. DiPIPPO.**

No. 2001–58–M.P.

Supreme Court of Rhode Island.

Feb. 9, 2001.

David Curtin—Chief Disciplinary Counsel, For Plaintiff.

Gary E. Blais, Providence, For Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

OPINION

PER CURIAM.

This disciplinary matter came before the Court pursuant to a recommendation of the Supreme Court Disciplinary Board (board) that the respondent, Robert F. DiPippo (respondent), be disbarred from the practice of law. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the [b]oard determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The board filed its recommendation on November 16, 2000. We directed respondent to appear before the Court at its conference on December 15, 2000, to show cause, if any, why he should not be disciplined. The respondent did not appear, but his counsel was present. After reviewing the report and recommendation of the board, and hearing the representations of Disciplinary Counsel and counsel for respondent, we conclude that cause has not been shown and that the imposition of discipline is appropriate.

The material facts of this case are not in dispute. On or about May 12, 1994, Debra

Roberts [1] (Roberts) was injured in an automobile accident. She received medical treatment for her injuries from various health-care professionals. Her costs for medical treatment were $4,911.75. Roberts retained respondent to represent her in a claim for damages arising from the accident. She had claims against the operator of the other motor vehicle involved in the collision, and also had claims against her own insurance carrier under the medical-payment (med-pay) and underinsured/uninsured provisions of her policy.

The respondent submitted the medical bills to Roberts' insurance company, Nationwide, for payment under the med-pay provisions. Nationwide forwarded to the respondent six checks, for total payment of $4,911.75. These payments were issued in October and December 1995. Each check was made payable to respondent "as attorney for" Roberts. The respondent did not notify his client that he had received these med-pay reimbursements on her behalf. He also did not use these funds to pay the medical bills. In each instance he endorsed the check, received payment thereon, and converted the funds for his own use.

In late 1995 or early 1996, Roberts terminated her attorney-client relationship with respondent and hired another attorney to proceed with her representation. In 1998, that attorney settled Roberts' claim with Nationwide. As part of that settlement, Nationwide agreed to pay $25,000, minus the amount previously paid under the med-pay provisions. It was at that time that Roberts became aware that respondent had received those payments. When she was unsuccessful in obtaining an accounting from respondent for those funds, she filed her complaint with the board. In responding to that complaint, respondent alleged that he was unable to locate any of his records regarding the disposition of those funds.

1. At the time of the accident, Roberts' name was Debra Young. However, by the time she filed her disciplinary complaint she was

Based upon these undisputed facts, the board concluded that respondent had violated Article V, Rules 1.15(a), (b), and (d); 1.16(a)(1) and (a)(6); and Rule 8.4(c) of the Supreme Court Rules of Professional Conduct. We shall address each of these conclusions in turn.

▮ Rule 1.15 entitled "Safekeeping property" codifies an attorney's fiduciary duties concerning the safeguarding of funds. Subsection (a) therein requires that an attorney hold funds belonging to clients or third persons in a separate account. Upon receipt of the med-pay funds, respondent had an ethical duty to deposit those funds in a separate account for the benefit of the client and/or the health-care providers. He did not do so, in violation of this requirement. Subsection (b) of this rule requires that an attorney promptly disburse to a client or third party funds that are in his or her possession and which the client or third party is entitled to receive. This respondent chose to promptly convert, rather than to promptly disburse, the funds. Rule 1.15(d) requires an attorney to deposit client or third-party funds into an interest-bearing account, the interest proceeds of which are payable to the Rhode Island Bar Foundation (commonly referred to as an IOLTA account). Subsection (f) of this rule provides that an attorney can elect not to participate in the IOLTA program, but he or she must make that election by written notice to this Court. Conversion of funds is not an acceptable means of opting out of the IOLTA program.

In 1992, this Court added Rule 1.16 to the Rules of Professional Conduct. This rule imposes strict record-keeping requirements for transactions involving client funds. This rule requires, in pertinent part:

known as Debra Roberts. We shall refer to her as Roberts to avoid confusion.

"(a) A lawyer shall maintain for seven (7) years after the events which they record:

(1) The records of all deposits in and withdrawals from special accounts * * * and of any other bank account which records the operations of the lawyer's practice of law. These records shall specifically identify the date, source and description of each item deposited, as well as the date, payee and purpose of each withdrawal or disbursement.

* * *

(6) Copies of all records showing payments to lawyers, investigators or other persons * * * for services rendered or performed."

This rule was added "to enable disciplinary authorities to conduct thorough investigations of attorneys' financial dealings with client funds * * *." *In the Matter of Watt*, 701 A.2d 319, 320 (R.I.1997). The respondent's failure to deposit these funds into his client account and to maintain records concerning the disposition of these funds is a clear circumvention of his obligations under this rule. Failure to comply with these requirements, even if there had been no conversion of funds, is clearly sanctionable.

Finally, the board concluded that respondent's conversion of client funds violated Rule 8.4(c) of the Rules of Professional Conduct, which provides that "[i]t is professional misconduct for a lawyer to: * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation." We have consistently held that "conversion of client funds is dishonest conduct as prohibited by this rule." *In the Matter of Ricci*, 735 A.2d 203, 208 (R.I.1999); *see also In the Matter of Hodge*, 676 A.2d 1362, 1363 (R.I.1996); *In the Matter of Krause*, 676 A.2d 1340, 1342 (R.I.1996).

■ We concur with the board's conclusion that respondent's conduct violated each of the rules enumerated above. We therefore must determine the appropriate level of discipline to impose. In determining that level of discipline we weigh those factors which serve to mitigate and/or to aggravate the attorney's conduct. *See In the Matter of Fishbein*, 701 A.2d 1018, 1020 (R.I.1997).

At the disciplinary hearing before the board, respondent testified that he was suffering from poor health at the time these incidents occurred. He was hospitalized several times in 1995 and 1996. He had a heart attack during this period and suffered from chronic respiratory problems. His counsel has represented to the Court that respondent could not be present at his show cause hearing because of another hospitalization. He also stated to the hearing panel that respondent was making efforts to make full restitution to Roberts.[2]

In aggravation, the conduct of the respondent was intentional and willful. Moreover, he is no stranger to the disciplinary process. He now is suspended from the practice of law for a period of three years for conversion of client funds in an unrelated matter. *See In the Matter of DiPippo*, 745 A.2d 736 (R.I.2000). Previously, he had been suspended for a period of three months for engaging in sexual relations with a client while he was representing her in a divorce action, and for providing false information to a credit union to assist that client in procuring a mortgage to finance the purchase of a home. *See In the Matter of DiPippo*, 678 A.2d 454 (R.I.1996).

After reviewing the record in these proceedings we conclude that the recommendation of the board is appropriate. Accordingly, the respondent, Robert F. DiPippo, is hereby disbarred from the practice of law in this state.

2. As of this date, this offer remains unfulfilled.