In the Matter of Aurendina G. VEIGA.

No. 2001–407–M.P.

Supreme Court of Rhode Island.

Oct. 29, 2001.

David Curtin, Esq., for Plaintiff.

David A. Levy, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before the Court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (board) that the respondent, Aurendina G. Veiga (respondent), be publicly censured.[1] Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the Board determines that a proceeding should * * * be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

On July 20, 2001, this Court issued an order directing respondent to appear before the Court on September 13, 2001, to show cause why the disciplinary sanction recommended by the board should not be imposed. The respondent failed to appear personally before the Court and elected to have counsel represent her.[2] After consideration of the findings and recommendations of the board, and the representations of respondent, we conclude that no such

1. In June 1999, respondent was appointed to the position of magistrate on the Rhode Island Traffic Tribunal. Since the conduct at issue here involved her actions as an attorney, the board has jurisdiction in this case pursuant to Article III, Rule 1 of the Supreme Court Rules of Disciplinary Procedure.

2. According to counsel, respondent's refusal to appear before the Supreme Court was due to the length of her calendar at the Traffic Tribunal.

cause has been shown and the respondent is hereby publicly censured.

 The undisputed facts of this matter are as follows. Carl Barovier (Barovier) was employed by the Pawtucket Police Department and was associated with the Office of the Attorney General Narcotics Strike Force (strike force). In December 1996, The Providence Journal, a newspaper of statewide circulation, published an article detailing the activities of the strike force. The article contained statements concerning Barovier that he believed could cause him personal and professional harm. Therefore, in March 1997, Barovier contacted respondent about potential legal remedies. The respondent agreed to represent Barovier on a contingent-fee basis. In September 1998, respondent requested and received from Barovier $165.00 for the cost of filing a civil action in court and payment of constable fees. Although respondent led Barovier to believe she filed a civil action on his behalf, she never did so. In fact, respondent led him to believe that she was attempting to resolve his case, but that The Providence Journal was denying liability.

In June 1999, respondent was appointed as a magistrate of the newly created Rhode Island Traffic Tribunal. She informed Barovier that she hoped to resolve his claim via arbitration before assuming her judicial duties and, if unsuccessful, she would help him to obtain alternate counsel to pursue his claim. However, since no claim had been filed by respondent, resolution by arbitration proved to be a chimera.

Subsequent to respondent's assumption of her duties at the Traffic Tribunal, Barovier attempted to communicate with her about the status of what he believed to be his pending claims. He did not receive a response from her. Throughout January 2000, on numerous occasions, he requested the return of his file, without success. When he finally obtained it, the "file" consisted of only Barovier's original documents. On February 17, 2000, respondent returned the filing fees. At that time, and for the first time, respondent advised Barovier that she thought his claim lacked merit. Of note, any claim Barovier may have had was extinguished in December 1999 by the passing of the applicable statute of limitations.

After the disciplinary hearing convened on this matter, the board concluded that respondent had violated Article V, Rules 1.3,[3] 1.4(b),[4] 1.17(d),[5] and 8.4(c)[6] of the Supreme Court Rules of Professional Conduct. We concur with the findings of the board.

In fashioning an appropriate remedy, the board considered respondent's distinguished career as a member of the bar, particularly in providing *pro bono* legal services. The board received several letters on her behalf, attesting to her zealous representation of her clients. It appears that her failures in her representation of Barovier were an anomaly, and not repre-

---

**3.** Article V, Rule 1.3 of the Supreme Court Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**4.** Rule 1.4(b) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

**5.** Rule 1.17(d) provides in pertinent part that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as * * * surrendering papers and property to which the client is entitled * * *."

**6.** Rule 8.4 provides that "[i]t is professional misconduct for a lawyer to: * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

sentative of her past practices as a member of the bar.

 However, the board rightfully concluded that the respondent's ethical lapses warrant the imposition of professional discipline. The purposes of professional discipline are twofold; protecting the public and maintaining the integrity of the profession. *See In re DiPippo,* 745 A.2d 736, 737 (R.I.2000) (citing *In re Ricci,* 735 A.2d 203, 208 (R.I.1999)). We concur with the board's recommendation that these purposes can best be served in the present matter by publicly censuring the respondent.

Accordingly, the respondent is hereby publicly censured. Additionally, because the respondent is now a member of the Judiciary, and the evidence suggests she may have made misrepresentations to Barovier after assuming judicial office, we refer this matter to the attention of the Commission on Judicial Tenure and Discipline for their review and for whatever further action that commission deems appropriate.