**In the Matter of William G. CONINGFORD.**

No. 2002–692–M.P.

Supreme Court of Rhode Island.

Jan. 27, 2003.

David Curtin, for Plaintiff.

Francis P. Castrovillari, Cranston, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before the Court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (board) that the respondent, William G. Coningford (respondent), be suspended from the practice of law for a period of nine months. Article III, Rule 6(d) of the

Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the Board determines that a proceeding should * * * be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The respondent was directed to appear at this Court's conference on November 22, 2002 to show cause, if any, why he should not be disciplined. The respondent failed to appear personally before the Court but elected to have counsel represent him. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that respondent should be disciplined. However, we decline to adopt the disciplinary recommendations of the board and hereby disbar respondent from the practice of law. The material facts supporting our decision are as follows.

The respondent represented Uncles Transmission Services, Inc. (Uncles), and Eric Whalen (Whalen) in a civil action brought against them in District Court by Alessandro and Lena DeQuattro (the DeQuattros). On April 23, 2001, after trial, the DeQuattros obtained a judgment against Uncles and Whalen in the amount of $2,300. The respondent filed an appeal on behalf of his clients.

Subsequent to his filing of the appeal, respondent negotiated a settlement of the dispute with the DeQuattros's attorney. Pursuant to the terms of that agreement, the DeQuattros would accept $1,000 to settle the claim. On May 31, 2001, the DeQuattros forwarded a dismissal stipulation and general release to respondent to be held in escrow pending payment of the agreed-upon sum.

The respondent falsely advised his clients that the matter had been settled for $1,300. On June 4, 2001, Uncles and Whalen forwarded that amount to respondent to pay the settlement. The respondent, however, failed to deposit the money into his client account. Instead, he commingled the money with his own property and converted it to his own use.

The DeQuattros learned that respondent had received the settlement money from his clients and notified their own attorney. On August 31, 2001, counsel for the DeQuattros sent a letter to respondent demanding payment. After receiving no reply, he forwarded a second letter, dated September 17, 2001, demanding a response to his first letter or else he would refer this matter to a "higher and more unpleasant authority." On September 26, 2001, respondent tendered an executed dismissal stipulation and a personal money order for $1,000 to the DeQuattros's attorney. On October 18, 2001, respondent sent a personal money order to Uncles and Whalen for the $300 he had obtained through his misrepresentation of the agreed settlement amount.

In another matter, respondent represented Eduardo and Pedro Ferreira (the Ferreiras) in their purchase of real estate in Providence, Rhode Island. The closing on the sale was conducted on October 28, 1998. The parties agreed that $5,000 of the sellers' proceeds would be held in escrow by respondent to pay for repairs necessary to correct existing fire code violations. On October 29, 1998, the escrow agreement and a check for $5,000 were forwarded to respondent. The respondent did not deposit that money into an escrow or client account, however, but commingled them with his own property, and converted it to his own use.

After making some of the necessary repairs, the Ferreiras attempted to communicate with respondent to obtain release of the escrowed money. Their attempts, however, were unsuccessful. On August 29, 2001, the Ferreiras filed a complaint against respondent with the board. On January 3, 2002, during the board's investigation of this complaint, respondent presented disciplinary counsel with a bank statement showing $5,000 in a bank account. He advised disciplinary counsel that he had borrowed this money from friends and that he would bring an action in interpleader to determine the sellers' and the Ferreiras' respective rights to the money. Contrary to his word, respondent never filed an interpleader action or otherwise disbursed the money to the Ferreiras or the sellers. That money remains unaccounted for.

■ Based upon the conduct of respondent, the board determined that he had violated Article V, Rules 1.15(a), 1.15(b), and 8.4(c) of the Supreme Court Rules of Professional Conduct.[1] We concur with the findings of the board. The respondent had an obligation to maintain his clients' money in accounts separate from his own property. By commingling that money with his own property, he violated Rule 1.15(a). In the Uncles and Whalen matter, he had a duty to promptly pay the settlement money to the DeQuattros once he received it from his clients. In the Ferreira matter, he had a duty to promptly

provide an accounting and make appropriate distributions to the Ferreiras and the sellers once he was notified that the necessary work had been done. In both instances he failed to do so, thereby violating Rule 1.15(b). Lastly, and of greatest importance to our decision, respondent's conversion of his client's money was a violation of Rule 8.4(c). *See In re Krause,* 676 A.2d 1340, 1342 (R.I.1996); *In re Sheehan,* 661 A.2d 526, 529 (R.I.1995).

In reviewing the matter, the board cited our previous decisions in *In re DiPippo,* 765 A.2d 1219 (R.I.2001), *In re Mosca,* 686 A.2d 927 (R.I.1996) and *Lisi v. Hines,* 610 A.2d 113 (R.I.1992), and concluded that disbarment is generally appropriate when an attorney has engaged in professional misconduct that rose to the level of charged or uncharged criminal behavior, and the attorney previously has been disciplined. Nevertheless, the board recommended that respondent be suspended from the practice of law for nine months, that any reinstatement of his privilege to practice law in this state be conditioned upon his making full restitution to the Ferreiras, and that his client trust account be supervised by a third party. In reaching this recommendation, the board recognized that respondent's misconduct was severe but noted that he had no previous disciplinary history.

■ We believe that the board misconstrued the import of our earlier decisions.

---

1. Article V, Rule 1.15(a) of the Supreme Court Rules of Professional Conduct provides, in pertinent part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

Rule 1.15(b) provides:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in

this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third persons, shall promptly render a full accounting regarding such property."

Rule 8.4(c) provides: "It is professional misconduct for a lawyer to: * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

We previously have noted that "a finding of criminal misconduct is not a necessary prerequisite to the imposition of the most serious of disciplinary sanctions." *In re Brousseau,* 697 A.2d 1079, 1081 (R.I.1997). Although respondent has not yet been charged with a crime in this matter, his wrongful conversion of client funds in the Ferreira matter is "tantamount to embezzlement." *Lisi v. Grimes,* 601 A.2d 497, 497 (R.I.1992). It is well-settled in this state that "misappropriation of client funds by an attorney warrants the imposition of the most severe disciplinary sanctions." *In re Daley,* 652 A.2d 456, 457 (R.I.1995).

 The presumptive sanction for the intentional misappropriation of client funds is disbarment. We have varied from this presumptive disposition only when presented with unique and compelling mitigating circumstances. *See id.* These include the making of full and immediate restitution, recognition of the wrongfulness of the conduct and full cooperation with the board. *See id.* The respondent has not taken any of those actions or presented any other equally compelling mitigating factors. He chose not to personally participate in the hearings before the board or this Court. Further, despite his ability to do so, respondent has not made restitution to the Ferreiras.

Although we give great weight to the recommendations of the board, this Court is the final arbiter of professional discipline. *See In re O'Donnell,* 736 A.2d 75, 81 (R.I.1999). We agree with the board that the purposes of professional discipline are to protect the public and maintain the integrity of the profession rather than to punish the attorney. *See id.* However, we do not agree that a nine-month suspension in this case will accomplish those purposes. We conclude that only the imposition of the harshest available disciplinary sanction is appropriate in this matter.

Accordingly, the respondent, William G. Coningford is hereby disbarred from the practice of law in this State, effective immediately. The respondent shall promptly furnish to the Clerk of this Court and to the Disciplinary Counsel the names and addresses of all clients he is currently representing in pending matters and he may refer his clients to another attorney.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.