**Supreme Court**
No. 2023-31-M.P.

In the Matter of James F. McAleer.            :

# O R D E R

This attorney disciplinary matter came before the Court pursuant to Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure. On October 23, 2023, the Disciplinary Board of the Supreme Court (the Board) forwarded to us a decision finding that the respondent, James F. McAleer, had violated the Supreme Court Rules of Professional Conduct, along with its recommendation that we disbar the respondent. Rule 6(d) provides:

> "If the [Disciplinary] Board determines that a proceeding should be dismissed, or that it should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order. Proceedings, if any, before this Court shall be conducted by [Disciplinary] Counsel."

We directed respondent to appear before the Court at its conference on November 21, 2023, to show cause, if any, why we should not accept the recommendation of the Board. The respondent appeared before the Court without counsel. Having heard the representations of respondent and this Court's Disciplinary Counsel, we concur with the decision of the Board that respondent

- 1 -

violated several Rules of Professional Conduct and should be disbarred. We hereby disbar respondent for his actions.

The respondent was authorized to practice law in the State of Rhode Island during all times material to this matter.[1] The respondent is subject to the Rules of Professional Conduct as adopted and promulgated as Article V of the Rhode Island Supreme Court Rules. The facts found by the Board are as follows. The respondent was appointed as the Executor and Fiduciary for the Estate of Valerie Webb (appointed August 5, 1996); Estate of Hertha Champlin (appointed December 3, 2014); and the Estate of Chauncey Champlain (appointed October 3, 2008). Clifford K. Webb was the sole beneficiary of the three estates.

On May 21, 2020, Mr. Webb filed a verified complaint (the Complaint) in Providence County Superior Court, alleging respondent failed to account for $557,496.27 in estate funds out of an estate worth $1,000,000. Mr. Webb alleged he only received $282,313.73. The Complaint also alleged respondent neglected to convey property in Oklahoma left to Mr. Webb and neglected to pay property taxes on the parcel. Mr. Webb alleged that, as a result, the property was sold at auction. Mr. Webb, through counsel, filed a motion for leave to issue a prejudgment writ of attachment.

---

[1] At the time of the filing of the Petition, respondent had been removed from the Master Roll of attorneys.

On August 4, 2020, respondent signed and later submitted an affidavit (the Affidavit) to the Superior Court attesting to, among other things, that he was "in the process of obtaining all (IOLTA) account disbursements made by [him] as necessary expenditures of the above estates." The respondent's Affidavit also alleged "none of the expenditures of the estates taken from [his] (IOLTA) account were for [his] personal benefit," and he "can account for all disbursements referenced above." The Affidavit does not refer to respondent having any physical limitations. At the time of filing this Affidavit, respondent was represented by counsel.

On September 9, 2020, the Superior Court issued an order restraining and enjoining respondent from "transferring and/or alienating any real or personal property until further order of the court" and from "transferring any and all checking accounts, bank accounts, savings accounts, stocks, bonds, investments and the like, other than the reasonable and necessary living expenses of the defendant and his family as well as reasonable attorney's fees incurred by the defendant, until further order of the court." The respondent was also ordered to conduct an investigation into his clients' accounts, including the bank accounts referenced in the Complaint. Furthermore, respondent was ordered to provide all disbursement documents to the plaintiff.

On October 9, 2020, Mr. Webb filed a complaint with Disciplinary Counsel bringing this matter to their attention. In response to the disciplinary complaint,

respondent submitted the same August 4, 2020 Affidavit to Disciplinary Counsel. On December 18, 2020, the Superior Court issued a Prejudgment Writ of Attachment in the amount of $300,000.00 against respondent.

On January 26, 2023, Disciplinary Counsel, following her investigation, filed a Petition for Disciplinary Action (Petition) against respondent, alleging several violations of the Rules of Professional Conduct for his conversion of at least $243,115.50 from the Hertha V. Champlin Estate (the Estate) for his own personal and professional benefit, with an additional $120,901.99 unaccounted for. The Petition alleged that $839,810 was transferred from the Estate account held at Wells Fargo into respondent's IOLTA account. Disciplinary Counsel charged violations of Rule 1.1 ("Competence"); Rule 1.3 ("Diligence"); Rule 1.5 ("Fees); Rule 1.15 ("Safekeeping property"); Rule 1.19 ("Required bookkeeping records"); Rule 3.3 ("Candor toward the tribunal"); Rule 5.3 ("Responsibilities regarding nonlawyer assistants"); and Rule 8.1 ("Bar admission and disciplinary matters"); and Rule 8.4 ("Misconduct").

The Petition was served on respondent, who was required to respond within twenty (20) days pursuant to disciplinary procedure. The respondent requested and was granted two thirty (30) day extensions on February 17, 2023, and March 22, 2023, respectively. On April 18, 2023, Disciplinary Counsel's office received a written request for a third thirty (30) day extension from respondent, citing ongoing

medical treatment and providing certain medical documentation. Attached to this third request were copies of two (2) checks (#3168 - $1,000.00 and #3169 - $3,500.00) payable to the Rhode Island Division of Taxation and U.S. Treasury. The memo line on both checks stated "H. Champlin Estimated Tax."[2] Because Rule 3.7(a) of the Rules of Procedure of the Disciplinary Board of the Supreme Court of Rhode Island allows no more than two (2) continuances, the Board denied respondent's third request for another thirty (30) day extension on April 21, 2023.

On July 12, 2023, a hearing was held before a three-member hearing panel of the Board (the Hearing Panel). Both respondent and Disciplinary Counsel presented their respective positions. Other than the above-referenced copies of checks, the Board found that respondent failed to provide any substantive accounting of the Estate funds to Disciplinary Counsel, the Superior Court, or Mr. Webb's counsel. The Board found that respondent also failed to file an answer in accordance with Rule 3.18 of the Rules of Procedure of the Disciplinary Board. Rule 3.18(b) requires that answers

> "shall be in writing, and drawn so as to advise fully and
> completely the participants and the Board as to the nature
> of the defense. They shall admit or deny specifically, and

---

[2] Bank records in evidence reflect that Check No. 3105 in the amount of $8,000 was written on September 20, 2016, payable to McAleer and McAleer and that Check No. 3181 was written on August 16, 2019, and made payable to James McAleer in the amount of $4,276. The Board found no record of any checks written, processed, and clearing between those check numbers and dates.

in reasonable detail, each material allegation of the petition and state clearly and concisely the facts and matters of law relied upon." *See also* Article III, Rule 6(b) of the Supreme Court Rules.

Because respondent never filed an answer to the Petition, despite obtaining two extensions to do so and being informed by Disciplinary Counsel in writing of the consequences of failing to file an answer, all the charges contained in the Petition were deemed admitted pursuant to Article III, Rule 6(b) of the Supreme Court Rules of Disciplinary Procedure for Attorneys.

The Disciplinary Board found that Disciplinary Counsel's investigation included a review of respondent's bank statements for his IOLTA account. There were twenty-eight (28) checks written from July 2014 through August 2019 from the Estate totaling $243,115.50 paid to respondent, with $175,170 paid to McAleer and McAleer and $69,945 paid to either James McAleer or James F. McAleer. The Board found that respondent provided no accounting of what those funds were for or where the money was. As of March 1, 2020, $1,979.32 remained in the IOLTA account for the benefit of the Estate, and an additional $120,901.99 remained unaccounted for.[3]

---

[3] The Board found that Disciplinary Counsel's investigation also revealed that $93,593.19 was paid on behalf of the Estate and that approximately $380,220 was paid to Mr. Webb.

At the hearing, Disciplinary Counsel offered the Petition and forty-eight (48) exhibits into evidence, which were admitted in full over respondent's objection. The basis for respondent's objection was he had not "been able to get to the files" because of a lifting and walking restriction, presumably imposed by a medical care provider. The only exhibits respondent offered into evidence, which were admitted over Disciplinary Counsel's objections, were certain medical documentation from the timeframe of June 2023 and July 2023.

When asked directly by the Hearing Panel if he had any explanation in response to the allegations or if he had anything to offer in mitigation, respondent repeatedly indicated that he "would have to get the files" and he attempted to have others retrieve files with no success. He also testified that two attorneys who had volunteered to search for the files had found some of the files but did not retrieve any documents. He further testified that his now-deceased secretary wrote certain checks at issue from his IOLTA account.

Chief Disciplinary Counsel Kerry Reilley Travers was sworn in at the hearing and testified regarding her investigation and interaction with respondent. Chief Travers testified that during the investigation she was contacted by an attorney with the firm from which respondent had rented office space. The attorney advised Chief Travers that respondent had been a tenant in their building and that he was being evicted. Chief Travers further testified that the attorney told her that respondent's

files were still at their office and they were trying to negotiate with him regarding their removal. Chief Travers went to the attorney's office and confirmed the presence of a large number of client files, including the files that related to the investigation.

Chief Travers was advised that the firm had given respondent a "drop date set for removing the files from the office; and [she] had reached an agreement with [the attorney] that if he did not comply by that date, [she] would come in and retrieve the files that he had, essentially, abandoned at her office." Right before the deadline, respondent sent a moving company to box and remove all the files. The respondent admitted to Chief Travers in a subsequent conversation that he had moved the files to his brother's garage in Warwick, Rhode Island. In a February 2022 meeting, respondent refused Chief Travers' request that her investigator be allowed to retrieve the files from the Warwick house. Chief Travers further testified that respondent's actions "stymied" her efforts to obtain the files.

Given a final chance to rebut the evidence or offer any information in mitigation, respondent testified in closing that the Affidavit submitted to both the Superior Court and to Disciplinary Counsel was signed by him, but never read. He also acknowledged refusing to allow access to the files at the request of Disciplinary Counsel and, lastly, testified that he did not dispute the authenticity of any of the

documents included in Petitioner's Confidential Exhibit 15 (copies of checks negotiated from his IOLTA Account) offered into evidence by Disciplinary Counsel.

Based on the facts and evidence presented at the hearing, the Board concluded that respondent violated several Rules of Professional Conduct.[4]  First, the Board found that respondent violated Rule 1.1 ("Competence").  According to Comment 5 to Rule 1.1, "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners."  The Board found that respondent failed to utilize proper methods and procedures to meet the standard of competence, as reflected in his inability to provide an explanation of the disappearance of $243,115.50, despite ample time and requests for an explanation. *See In re Coaty*, 985 A.2d 1020, 1022-25 (R.I. 2010) (mem.) (finding that the respondent, who did not provide an accounting, violated Rule 1.1, because the respondent's "billing practices and handling of client funds can, at best, be described charitably as sloppy and well below the standard of care expected as a fiduciary").

---

[4] The Board declined to find a violation of Rule 3.3 ("Candor toward the tribunal") at this time because respondent failed to cooperate with reasonable requests for information by Disciplinary Counsel in violation of Article III, Rule 6(e) of the Supreme Court Rules, and thus the Board could not determine the veracity of respondent's statements to the Panel.

A competent attorney utilizing the standard of a competent practitioner would be able to provide an explanation to his client, Disciplinary Counsel or the Court.

Second, the Board found that respondent violated Rule 1.3 ("Diligence"). Where, as here, an attorney refuses to provide an accounting to a client, such conduct is a violation of Rule 1.3. *See In re Foster*, 826 A.2d 949, 952 (R.I. 2003) (affirming the Board's determination that the respondent violated Rule 1.3 where the attorney failed to provide an accounting). Third, the Board found that respondent violated Rule 1.5 ("Fees"). The respondent's unsupported and unexplained payment of $243,115.50 to himself and his firm indicates that he has charged Mr. Webb an "unreasonable fee" for the services provided. The lack of an explanation for the missing funds or why such significant payments were made to respondent or his firm reflects an improper fee arrangement.

Fourth, the Board found that respondent violated Rule 1.15 ("Safekeeping property"). The respondent's failure to provide an accounting after multiple requests by the Board and Mr. Webb constitutes a violation of Rule 1.15(d), which requires that a lawyer shall "promptly render a full accounting regarding [the client's] property." *See also In re Howard*, 108 A.3d 204, 205 (R.I. 2015) (mem.) (finding that failure to provide an accounting that was accurate or based on contemporaneous time records violated Rule 1.15). Furthermore, as the commentary to Rule 1.15 makes clear, lawyers should hold funds or property of others "with the care required

of a professional fiduciary." Here, respondent has not held his client's funds "with the care required of a professional fiduciary." Moreover, over $120,000 of client money is still unaccounted for.

Fifth, the Board found that respondent violated Rule 1.19 ("Required bookkeeping records") because he failed to maintain proper records regarding $243,115.50 that he paid to himself and his firm, as well as providing no explanation for over $120,000 that remains unaccounted for. According to Rule 1.19(a)(1), all attorneys must maintain "records of all deposits in and withdrawals from special accounts specified in Rule 1.15 and of any other bank account which records the operations of the lawyer's practice of law." Likewise, respondent was required to maintain "[c]opies of all statements to clients or other persons showing the disbursement of funds to them or on their behalf." The respondent's failure to provide such records, upon request, violates Rule 1.19.

Sixth, the Board found that respondent violated Rule 5.3 ("Responsibilities regarding nonlawyer assistants"). To the extent respondent claims that any rule violation was due to a non-attorney in his employ, that is no excuse for any rule violations. The respondent was required to make reasonable efforts to oversee the actions of the non-attorneys—in this case, his secretary. Seventh, the Board found that respondent violated Rule 8.1 ("Bar admission and disciplinary matters") because, despite multiple continuances and opportunities to do so, he has failed to

- 11 -

"respond to a lawful demand for information from * * * disciplinary * * * authority * * *." Disciplinary Counsel requested that respondent provide various records on multiple occasions and each time it was "stymied" by respondent. The respondent took affirmative steps to ensure that physical files which contained documents related to the investigation would not land in the hands of the investigators. Finally, the Board found that respondent violated Rule 8.4 ("Misconduct"). The respondent has violated a number of the Rules of Professional Conduct, which violations themselves provide a basis to find a violation of Rule 8.4.

The Board next turned to the issue of an appropriate sanction to recommend to this Court. In fashioning an appropriate sanction, the Board and this Court are cognizant that the purposes of professional discipline are to protect the public and to maintain the integrity of the profession, *In re McBurney*, 13 A.3d 654, 655 (R.I. 2011) (mem.), and not to punish the attorney. *In re Almonte*, 678 A.2d 457, 458 (R.I. 1996). Mitigating and aggravating factors must be weighted to determine the proper level of discipline that should be imposed. *In re Fishbein*, 701 A.2d 1018, 1020 (R.I. 1997). This Court has previously held that the presumptive sanction for the intentional misappropriation of funds is disbarment. *See In re Amaral*, 981 A.2d 1027, 1029 (R.I. 2009) (mem.) (disbarring attorney for converting over $52,000 despite making full restitution prior to disciplinary hearing); *In re Coningford*, 815 A.2d 54, 55-57 (R.I. 2003) (disbarring attorney for commingling and converting

- 12 -

$6,300 of client funds and provided no mitigating testimony, no restitution, and failed to appear at disciplinary hearing). Further, writing and cashing checks payable to oneself while serving as administrator or attorney for an estate is tantamount to embezzlement and warrants disbarment. *See Lisi v. Grimes*, 601 A.2d 497, 497 (R.I. 1992).

Here, the Board found a complete lack of mitigating factors to warrant a lesser sanction, and in fact found that aggravating factors—namely, that respondent impeded Disciplinary Counsel's investigation—warranted the imposition of the most severe disciplinary sanction. "While this Court gives great weight to the recommendations of the [B]oard, we remain the final arbiter of professional discipline." *In re Hellew*, 828 A.2d 531, 533 (R.I. 2003) (mem.). We agree with the Board's thorough analysis of the facts and evidence and adopt their recommendation. It should further be noted that at the show cause hearing, respondent failed to answer the Court's questions about where the money is and failed to provide any mitigating circumstances or evidence to support his position that he has not been able to adequately defend himself, a claim which this Court finds self-serving and wholly unsubstantiated. Thus, we hereby disbar respondent James F. McAleer for his conduct.

The respondent is directed to comply with the mandates of Article III, Rule 15 of the Supreme Court Rules of Disciplinary Procedure for Attorneys, and within

ten days after the effective date of the disbarment order, the respondent shall file with the Clerk of this Court an affidavit showing:

(1) That he has fully complied with the provisions of this Order and with the requirements of Article III, Rule 15;

(2) A list of other state, federal and administrative jurisdictions to which he is admitted to practice law; and

(3) That he has served a copy of the affidavit upon Disciplinary Counsel. The affidavit shall also set forth the residence or other address where communications may thereafter be directed to respondent.

Justice Robinson and Justice Long did not participate.

Entered as an Order of this Court this 19th Day of December 2023.

By Order,

/s/ *Meredith A. Benoit*
Clerk

.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## ORDER COVER SHEET

| | | |
|---|---|---|
| **Title of Case** | In the Matter of James F. McAleer. | |
| **Case Number** | No. 2023-31-M.P. | |
| **Date Order Filed** | December 19, 2023 | |
| **Justices** | Suttell, C.J., Goldberg, and Lynch Prata, JJ. | |
| **Source of Appeal** | N/A | |
| **Judicial Officer from Lower Court** | N/A | |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Kerry Reilley Travers, Esq.<br>Chief Disciplinary Counsel | |
| | For Respondent:<br><br>James F. McAleer, *pro se* | |