**In the Matter of John T. SHEEHAN, Jr.**

**No. 95–341–M.P.**

Supreme Court of Rhode Island.

July 31, 1995.

David Curtin, Chief Disciplinary Counsel, for plaintiff.

Eugene Toro, Providence, for defendant.

OPINION

PER CURIAM.

This matter comes before the court pursuant to article III of the Supreme Court Rules, Disciplinary Procedure for Attorneys, on two separate and unrelated decisions and recommendations of the Supreme Court Disciplinary Board (board) that the respondent, John T. Sheehan, Jr., be suspended from the practice of law. Rule 6(d) of article III provides, in pertinent part:

"If the Board determines that a proceeding should be * * * concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The respondent was afforded an opportunity to appear before this court and show cause why the sanctions recommended by the board should not be adopted by the court.

We find that cause has not been shown and that discipline should be imposed.

The first case before the board arose from respondent's representation of A. Joseph and E. Virginia Cavallaro (Cavallaros) relative to a real estate closing. The facts, as found by the board are as follows.

On or about December 31, 1990, the Cavallaros received a mortgage commitment from Travelers Mortgage Services, now known as G.E. Capital Mortgages, Inc. (G.E.), for a mortgage loan in the amount of $157,500 to refinance existing mortgages on real estate located in Portsmouth, Rhode Island. It was a condition of the mortgage commitment that the funds be applied to pay off an existing first mortgage to Fleet National Bank and a second mortgage to John DiBona (DiBona) of Newport, Rhode Island, or the provision of satisfactory proof of their assumption. The mortgage commitment to the Cavallaros expressly provided, "You will not be permitted to receive any significant cash from loan proceeds. Unused funds must be returned to us and credited to your loan."

The respondent was designated as the settlement agent to close the refinance loan. Prior to the closing, G.E. delivered settlement instructions to respondent regarding closing the refinance loan. Those settlement instructions provided, inter alia, that the prior mortgages must be paid off and that the borrowers, the Cavallaros, were not to receive any cash from the loan proceeds. These instructions from the lender were reinforced with a settlement checklist, which stated as loan conditions, "No cash out" and "Pay off mortgage with Fleet first and John DiBona second."

The closing on the refinance loan was conducted by respondent on February 5, 1991. On that date respondent prepared a settlement statement of the loan closing showing disbursement of the loan proceeds, expressly indicating that the sum of $14,800 had been deducted from the loan proceeds to pay off the second mortgage held by DiBona. The respondent, as settlement agent, attested to the accuracy of the settlement statement by signing a written statement that declares:

"The * * * settlement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement."

The respondent also executed a "Closing Attorney or Closing Agent Certification" for the benefit of G.E. In that certification, respondent stated: "I closed the loan in strict compliance with all instructions stated in your Settlement Instructions or given to me orally. I disbursed your proceeds check in accordance with the disbursements shown on the * * * Settlement Statement which I am providing you[,] with respect to this loan." The respondent further added, "The mortgage, Deed of Trust or Security Deed securing this loan is a valid first lien."

The above-noted statements by respondent were not true. Although the settlement statement indicates that the second mortgage held by DiBona had been paid off from the loan proceeds, this was not done.[1] Rather than pay that mortgage, respondent diverted that sum of money, with the consent of the Cavallaros, for his personal use. He continued to make the monthly payments on the second mortgage to DiBona as they became due. He did not advise G.E. that he had borrowed those funds, nor did he amend the previous statements he had made regarding disbursement of the loan proceeds. On May 31, 1991, more than three months after the closing of the refinance loan, respondent obtained and recorded a subordination agreement from DiBona, placing his existing mortgage in a subordinate position to that of G.E. Prior to the recording of that subordination agreement, the mortgage to G.E. to secure the refinance loan was not a valid first lien.

The respondent became delinquent on the monthly mortgage payments to DiBona. Subsequent inquiries from DiBona through his attorney led to the filing of a complaint against respondent with the Supreme Court's disciplinary counsel, who commenced an investigation. On March 5, 1992, respondent appeared at the Office of Disciplinary Counsel in response to a subpoena issued pursuant to that investigation. On that date re-

---

1. The remainder of the transactions recorded on the settlement statement were not an issue in the disciplinary proceeding. Presumably those transactions were accurately recorded.

spondent stated that he had issued a check for payment of the entire amount due on the mortgage to DiBona on March 2, 1992, and that he had deposited approximately $13,000 of his own funds into his account to ensure that the check would be honored when presented for payment. He stated that the deposit had been made within seven days prior to March 5, 1992. However, bank records reveal that the deposit was not made until March 5, 1992, the same date respondent appeared at the Office of Disciplinary Counsel in response to the subpoena. DiBona received full payment of the mortgage loan on March 10, 1992.

The board found that the conduct of respondent violated the following rules of article V, of the Rules of Professional Conduct:

1. "Rule 1.7. * * *

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

2. "Rule 1.15. * * *

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person."

3. "Rule 1.15. * * *

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third persons, shall promptly render a full accounting regarding such property."

4. "Rule 8.4. * * * It is professional misconduct for a lawyer to: * * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

We agree with the findings of the board. The respondent had a fiduciary duty to his client, the lender. He allowed his own interests in obtaining access to the funds that had been provided by the lender to supersede his duties to the lender to ensure that the loan was closed in strict accordance with the instructions provided. By diverting those funds without the knowledge or the consent of the lender, he breached his fiduciary duties. It is of no moment that the Cavallaros purported to lend respondent the money—under the loan terms those funds were not the property of the Cavallaros. They had no authority to "loan" them to respondent.

The respondent's actions in diverting those funds also resulted in his violation of Rules 1.15(a) and (b). He had an obligation to safeguard the funds of G.E. When it became clear that those funds would not be applied in accordance with the lender's strict instructions, they should have either been returned to the lender or maintained by respondent in a segregated account pending further instructions. The respondent's failure to do so violates his duty to hold the property of others with the care required of a professional fiduciary.

It is also abundantly clear that respondent engaged in a course of conduct involving dishonesty. He submitted false statements to the lender that would lead the lender to believe that the loan proceeds had been properly disbursed. His failure to notify the lender that the statements were false only served to continue that deception. Once caught in his tangled web of deception, he continued his pattern of dishonesty by making a false representation to the disciplinary

counsel regarding the timing of his payment of the DiBona loan.

The board recommended that respondent be suspended from the practice of law for a period of three months for the foregoing ethical misconduct.

The second complaint arose from respondent's representation of Frank Pimental (Pimental), of Newport, Rhode Island. Pimental had given a loan to Richard and Ellen Pierce. This loan was secured by a mortgage on real estate. The Pierces filed a voluntary petition in bankruptcy, and Pimental hired respondent to protect his interests in the bankruptcy proceeding.

In March of 1990 respondent received a check in the amount of $49,818.04 on behalf of Pimental as a result of the bankruptcy proceedings. On March 8, 1990, respondent deposited this check into an all-purpose account, which he used for client, business, and personal matters. Prior to making any disbursements of these funds to Pimental, respondent wrote checks on this account for unrelated business purposes and personal expenditures. By March 14, 1990, the balance of funds available in this account was $4,551.64. The respondent subsequently issued a check from this account to Pimental for full payment of the funds collected on his behalf. This check was dishonored when presented for payment because of an insufficiency of funds available in the account.

Within six weeks from the date the dishonored check was presented for payment, respondent made two payments to Pimental totaling $40,000 and executed a promissory note for the remainder of the funds due at an agreed interest rate of 20 percent per annum. The respondent ultimately made the required payments, but the total amount due to Pimental was not paid in full until more than one year had passed from the time respondent had received those funds.

It was the conclusion of the board that the conduct of respondent violated Rules 1.15(a), 1.15(b), and 8.4(c) of the Rules of Professional Conduct. The board also found that the record did not indicate an intent permanently to deprive Pimental of his funds. Accordingly, an allegation that respondent had violated Rule 8.4(b), which provides that it is misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" was dismissed by the board. We concur with all of the board's findings. The board further recommended that respondent be suspended from the practice of law for three months as a result of the second complaint.

Our review of the record in both of these cases indicates that the board's findings of facts and the conclusions regarding rule violations are fully supported by the record. The board's recommendations in each of these matters for sanction when viewed separately, are also proper. However, when the attorney's conduct in both of these cases is considered as a whole, a more severe sanction is required. The respondent's course of conduct reveals a disregard for his obligations as an attorney and a failure to act reliably in carrying out his duties as a member of the bar.

Accordingly, we order that the respondent be suspended from the practice of law for a period of one year, commencing thirty days from the date of this opinion. The respondent is ordered to comply with the provisions of article III, Rule 15, of the Supreme Court Rules.

MURRAY and BOURCIER, JJ., not participating.