## In the Matter of John T. SHEEHAN Jr.

### No. 09–367–M.P.

Supreme Court of Rhode Island.

Dec. 22, 2009.

David Curtin, Disciplinary Counsel.

John T. Sheehan, Jr.

## O R D E R

This attorney disciplinary matter came before the Court at its conference on November 23, 2009. On September 11, 2009, this Court's disciplinary board (board) forwarded to the court a decision and recommendation that the respondent, John T. Sheehan, Jr. (respondent), be suspended from the practice of law for eighteen months. On October 9, 2009, the board forwarded an additional decision and recommendation, in an unrelated matter, that we suspend the respondent for two years. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the board determines that a proceeding should be * * * concluded by public censure, suspension or disbarment, it shall submit its findings and recommen-

dations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

We directed the respondent to show cause, if any, why we should not impose the discipline recommended by the board in each matter. Having heard the representations of respondent and this Court's disciplinary counsel, and having reviewed the record, we deem that an order suspending respondent from the practice of law is appropriate.

The relevant facts giving rise to these disciplinary proceedings are as follows. The respondent represented Mona Woo (Woo) on several legal matters between 2003 and 2007. In March of 2006 he requested that Woo loan him $50,000 and advised her that this personal loan would be secured by a mortgage on real estate. The respondent did not advise Woo to seek the advice of independent counsel regarding the terms of the loan.

The respondent prepared and executed a promissory note pursuant to which he would repay the principal of the loan plus interest at the rate of 12 percent per year. The promissory note provided that the respondent would make monthly payments of $500 to Woo on the sixth day of each month, with payments commencing on April 6, 2006. The note further provided that the loan would be paid in full upon the sale of the real estate that was security for the loan.

The respondent also prepared and executed a mortgage deed in favor of Woo on property located at 61 Bergen Street, Providence, Rhode Island. The owner of record of that property was an entity known as Bergen 59 Associates, and respondent signed the promissory note and mortgage deed as "managing partner" of that entity. At the time the mortgage

deed was executed the property was encumbered by several prior mortgages of record.

In September of 2006, Bergen 59 Associates, acting through respondent, sold the property located at 61 Bergen Street. The respondent provided to the purchaser's attorney a document entitled "Discharge of Mortgage," purportedly signed by Woo, releasing her security interest in the property. Woo did not sign this discharge, and respondent has admitted that he signed her name to that document without her knowledge or permission. The respondent, acting as a notary public, executed an acknowledgment that Woo had appeared before him personally, and signed the discharge as her free act and deed.

Bergen 59 Associates received $27,725.76 as net proceeds from the sale. The respondent did not inform Woo that the property had been sold, and he did not give her any of the funds from the sale. Thereafter, respondent provided Woo with sporadic monthly payments of $500. He provided her with several post-dated checks, payable in the amount of $50,500; however, he advised her not to present those checks for payment as there were insufficient funds in the account.

Woo filed a civil action against the respondent alleging breach of contract and fraud. The respondent executed a settlement stipulation in that action wherein he agreed to repay the outstanding loan amount, plus interest. That stipulation became an order of the Superior Court. However, respondent has not complied with that settlement stipulation, and has been found to be in contempt of that order.

After a hearing, the board determined that respondent's conduct violated Article V, Rules 1.8(a)[1] and 8.4(c)[2] of the Supreme Court Rules of Professional Conduct. We agree. When an attorney borrows money from a client an inherent conflict is created that impairs the attorney's obligation to render independent professional advice to the client. *In the Matter of Scott,* 694 A.2d 732, 735 (R.I. 1997). The respondent failed to give his client the opportunity to seek the advice of independent counsel prior to entering into this business transaction, and failed to receive her informed consent. His breach of Rule 1.8(a) was complete when he received the loan from the client; his failure to comply with the loan terms compounded that violation.

Additionally, respondent engaged in a course of dishonest conduct, including forging his clients' name to the discharge of the mortgage, falsely notarizing her forged signature, and then failing to advise his client that the property securing the promissory note had been sold. This court recently has disbarred an attorney for misconduct that included, *inter alia,* forging a client's name to a settlement check. *See*

---

**1.** Article V, Rule 1.8(a) of the Supreme Court Rules of Professional Conduct, as in effect at all times relevant to this matter, provided: "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto." Rule 1.8(a) was amended effective April 15, 2007. However, those amendments do not change our view of respondent's conduct.

**2.** Rule 8.4(c), entitled "Misconduct," provides: "It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

*In the Matter of Amaral,* 981 A.2d 1027 (R.I.2009). We consistently have suspended attorneys from the practice of law for falsely notarizing documents. *See In the Matter of McCarthy,* 973 A.2d 617 (R.I. 2009) (lawyer suspended for two months for falsely notarizing closing documents); *Lisi v. Resmini,* 603 A.2d 321 (R.I.1992) (lawyer suspended for one year for falsely notarizing answers to interrogatories). Accordingly, the board's recommendation for an eighteen-month suspension is in accord with prior decisions of this Court.

The second matter before this court arose from a complaint filed by disciplinary counsel. Prior to November of 2006, respondent was a tenant residing at 34 Bayside Avenue, Newport, Rhode Island. William Walaska (Walaska) was the owner of that property. The respondent entered into an agreement to purchase the property from Walaska. At the time of the closing in November of 2006, respondent was $12,250 in arrears on the monthly rent he owed to Walaska. It was condition of the sale that respondent pay the outstanding rent.

On November 2, 2006, respondent gave Walaska a check in the amount of $12,250 for the arrearage. That check was drawn on an account entitled "John T. Sheehan,. Jr., Attorney–at–Law, Escrow Account." Walaska made several attempts to deposit this check into his account, but the check was returned due to insufficient funds. In November of 2007, Walaska filed a criminal complaint with the Rhode Island State Police regarding the insufficient funds. As a result of that complaint a warrant was obtained for the arrest of respondent. Upon being made aware of the existence of the arrest warrant, respondent paid Walaska the funds owed and the criminal complaint was withdrawn.

However the withdrawal of the criminal complaint was not the end of this matter. The state police notified disciplinary counsel of these events, and disciplinary counsel conducted his own investigation. In responding to the complaint filed by disciplinary counsel, respondent asserted that his check to Walaska was drawn on a personal escrow account that was not used for client purposes. That assertion was not truthful, and further investigation revealed that respondent used this account for personal purposes as well as to disburse client funds.

After hearing, the board concluded that respondent violated Rules 1.15(a)[3]; 1.15(b)[4] and 8.4(c) in this matter. We agree with the board's conclusions. The respondent clearly engaged in a pattern of commingling client and personal funds in violation of Rule 1.15(a)(b). While his account was designated as his "escrow account," the account was clearly used for both client and business purposes. We consider an attorney's actual use of an account, and not the designation given to it

**3.** Article V, Rule 1.15(a) of the Supreme Court Rules of Professional Conduct entitled, "Safekeeping Property," provides, in pertinent part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

**4.** Rule 1.15(b), as in effect at all times relevant to this proceeding .provided "Upon receiving funds or other property in which a client or third person has an interest, a law-
yer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." As a result of a rule amendment effective April 15, 2007, this provision is now codified as Rule 1.15(d).

by the attorney, in determining whether these rules have been violated. *In the Matter of Indeglia,* 765 A.2d 444, 447–48 (R.I.2001). Moreover, this is not the first time the respondent has appeared before us for violating this rule. He was suspended for depositing client funds into an all-purpose account, which he used for client, business and personal expenses. *In the Matter of Sheehan,* 661 A.2d 526, 529 (R.I.1995). The respondent also engaged in dishonest conduct in violation of Rule 8.4(c) by knowingly providing Walaska a check drawn against insufficient funds and by making a false statement to disciplinary counsel regarding his use of the escrow account. The board has recommended that the respondent be suspended for two years for these violations.

In fashioning an appropriate sanction for respondent's rule violations in each of these complaints we are mindful that the purpose of professional discipline is two-fold; protecting the public and maintaining the integrity of the profession. *Matter of Scott,* 694 A.2d at 736. The board has presented us with recommendations in each of these disciplinary matters that, standing alone, are appropriate. When we consider the totality of his misconduct, and his prior disciplinary history, which also includes a public censure for facilitating a loan of probate estate funds at usurious interest rates, *In the Matter of Sheehan,* No.2007–191–M.P. (R.I., filed June 6, 2007), we conclude that the separate recommendations for terms of suspension of eighteen months and two years should be imposed consecutively to each other, rather than concurrently. Additionally, we find it deeply disturbing that the respondent is presently in contempt of a Superior Court order to make restitution to Woo, and has not purged himself of that contempt.

Accordingly, we hereby suspend the respondent for an indefinite period, until he has purged himself of the order of contempt of the Superior Court. Once he has purged himself of contempt, the respondent shall be suspended for a definite period of forty-two months. The respondent shall not be eligible to apply for readmission to the bar until he has satisfied the judgment in favor of Woo in its entirety. He shall provide quarterly annual reports to disciplinary counsel as to the status of his payments to Woo, until that judgment is paid. This order of suspension shall commence thirty days from the date of this order.